## COOK v. STATE; HORN v. STATE; WEATHERLY v. STATE and ROMERO v. STATE
Nos. 80-1276-AP-01, 80-1277-AP-01
80-1278-AP-01 and 80-1279-AP-01
(Consolidated)
Twelfth Judicial Circuit, Sarasota County, Appellate Division
February 26, 1981

Jordan L. Wallach, Lee & Surfus, for appellants.

James A. Gardner, State Attorney, Stephen W. Urse, II, Asst. State Attorney, for appellee.

STEPHEN L. DAKAN, Circuit Judge.

These cases, consolidated for the appeal, are from the County Court of Sarasota County, Florida, and appeal Appellants' convictions, after a non-jury trial, of Driving While Under the Influence of Alcoholic Beverages. The point raised is the trial Court's failure to suppress the results of the breathalyzer tests performed on Appellants after their arrests.

During the discovery process, Appellants demanded production of their breath samples taken in connection with the breathalyzer tests. Since there were none, the Appellee could not supply them. Appellants then moved, before trial and during the trial, to suppress the test results because the breath samples were not produced for their inspection. The trial Court denied these motions.

In its order denying the motions to suppress, the Court found the test was properly administered and all the regulations of the Department of Health and Rehabilitative Services had been followed. The Court found that there is no procedure for the preservation of chemical breath test samples, but that there is an Indium Crimper Unit used in conjunction with the Gas Chromatograph Intoximeter Mark IV which assures that separate breath samples can be taken and preserved and used for future testing.

At the trial, Appellants presented expert testimony, through Dale C. Wingeleth, Ph. D., that there are several methods by which breath samples can be taken and preserved for future testing. The Indium Crimper Unit is one of the devices which will preserve breath. Dr. Wingeleth testified to several other devices, all of which have been available commercially for quite some time, and all of which are recognized as valid by the scientific community. Dr. Wingeleth testified that breath samples have been preserved for up to 14 months and found to be in agreement within ten percent of blood samples taken at the

time the breath was initially taken. These devices for collecting and preserving breath samples are relatively inexpensive and easy to obtain.

The question on appeal is whether the State's failure to preserve breath samples for Appellants' future testing denied them their constitutional right to due process of law. This Court finds it was and reverses the convictions for new trials.

On the general subject to destruction of evidence by the State, Florida and Federal Appellate decisions seem to hold that the due process test is: (1) whether the evidence was destroyed or suppressed by the State; (2) whether the evidence is material to a defendant's case; and in some appellate decisions, whether the evidence is exculpatory.

The separate samples of breath requested by defendants were neither destroyed or suppressed by the State—they were simply never collected or preserved. The testimony in this case shows, however, that collection and preservation of breath samples can be done incident to the procedure routinely performed by breathalyzer operators. This Court feels the State has a duty to preserve evidence which is material to a defendant's case, and failure to do so amounts to destruction or suppression. All appellate authorities agree that it makes no difference whether the destruction was in good faith or inadvertent. The Court is not criticizing breathalyzer operators for not doing something they had no instructions to do. In view of this Court's holdings, however, the omission amounts to a suppression.

The breath sample requested by Appellants are clearly material to the case. Florida law creates a presumption of guilt if the breathalyzer results show a defendant had 0.10 percent or more by weight of alcohol in his blood. Section 322.262, Florida Statutes. At least one Florida Appellate Court has held that a person has no legal right to refuse a breathalyzer test upon arrest, and if the person does refuse, that fact may be admitted as evidence at his trial. *State v. Duke,* 378 So.2d 96 (Fla. 2nd DCA 1979). A defendant's ability to rebut the presumption is, of course, dependent upon his ability to attack the accuracy of the machine which tested his blood alcohol level. Cross-examination of the machine operator will only reveal whether he followed the required procedures in performing the test. Whether the machine was capable of correctly calculating the amount of alcohol in a defendant's blood can only be determined by analyzing that upon which the machine's reading is based—the breath itself.

Although the expert witness testified that independently preserved samples proved exculpatory in about 10 per cent of the cases, it is impossible to tell whether the breath samples requested by Appellants

would have exculpated them. This Court is of the opinion that the Appellants need not show that evidence they sought to discover, but which is not available because of state action, would have been favorable to them, but simply that the evidence is material. To hold otherwise would encourage the destruction of evidence by the state, thus placing an impossible legal burden upon the defendant.

Although no Florida appellate court has ruled on this question, other jurisdictions have. This Court has relied upon the decisions in *Lauderdale v. State,* 548 P.2d 376 (Alaska 1976); *Garcia v. District Court,* 589 P.2d 924 (Colo. 1979); and especially the well-reasoned, well-written opinion of the Court of Appeals of Wisconsin in *State v. Booth,* 295 N.W.2d 194 (Wis. App. 1980).

The Appellee has cited several cases from other jurisdictions in support of their position, but these cases rejected the due process argument either on the ground that there was no evidence in the record to support that argument or that the scientific principle involved in preserving breath samples did not have general acceptance in the scientific community.

In the cases on appeal, the uncontroverted testimony is that breath samples can be preserved easily and inexpensively, and that the several methods for collection and preservation have general acceptance in the scientific community.

Obviously, this ruling can have not retroactive application except to the parties in these appeals. As for future application, it is not the Court's province to order the executive branch of government to follow a particular method in complying with this ruling. The Court suggests that a reasonable time a law enforcement should be required to keep breath samples would be, perhaps, sixty to ninety days. It is also possible that a person could waive his right to the preservation of a breath sample after being informed of this right. It is certainly legally permissible for the cost of the breath preservation device to be assessed to the person who requests it. See, e.g. *Baca v. Smith,* 604 P.2d 617 (Ariz. 1979).

Finally, this ruling only prohibits the introduction of the breathalyzer results or testimony about the results at a subsequent trial. The State is not, by this Court's ruling, prevented from trying Appellants again and introducing other admissible evidence in an attempt to convict them.

Appellant's convictions are reversed, and their cases remanded to the County Court of Sarasota County, Florida, for new trials.